UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:20-CR-177 RLW |
| GREGORY CLARK, | ) ) ) |
| Defendant. | ) ) |

### GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant GREGORY CLARK, represented by defense counsel Brocca Morrison, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1 of the charge, the government agrees to move for the dismissal as to the defendant of Counts 2 and 3 at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to

1

the defendant's extortion of victim DW during the time period alleged in the Indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

### 3. ELEMENTS:

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 875(d), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

First, the Defendant knowingly sent a message in interstate commerce containing a true threat to damage the property and reputation of another; and

Second, the Defendant did so with the intent to extort money or something else of value to the Defendant.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

2

On December 2, 2019, defendant Gregory Clark ("Clark") became employed by DW as a sales manager. DW is headquartered and based in St. Louis, Missouri, in the Eastern District of Missouri, where its computer servers are located. Pursuant to the terms of his employment, Clark signed a non-disclosure, non-solicitation and non-competition agreement.

On February 14, 2020, DW terminated Clark due to performance issues. On February 25, 2020, Clark, who was located in the State of North Carolina, sent an email from email address "gregoryclark4@me.com" to GG, DW Regional Manager, who was Clark's regional manager. This email stated as follows:

> Garrett,
> I wanted to make you aware of my plans. I believe you were sincere in your desire to give me a opportunity in December. Also sincere in allowing me to return to my previous work since February 13. We both have well over 20 years invested in this career. I have no desire to jeopardize your career or standing with [DW]. My financial struggles the past few years have been both humbling and emasculating. Not providing for my family at a acceptable level has been very hard on me. And my family.
> We get paid to bring value into the marketplace. The past 100 days my value has changed. I can tell you that the majority of [DW's] profits are coming from [client M] and [client C]. Keys is the biggest profit center. Of that cutting keys for the repossession vehicles is the highest gross within the company. I can tell you there is a large discrepancy between what [client C] is paying for key service and [client M's] rate. Part of that was from being a good listener in our first meeting in Lexington. Part is from studying the PL statement from November. Also the PL statement from sept 2017 on Smartsheet. Backing into it by looking at the cost of key blanks. Looking online to see the rate [DW] is paying to hiring key techs. Calling finance companies and [client M] to find out the rate they are being charged in all repossession fees. Keys are without a doubt the largest profit center within [DW]. 99% of that profit coming from [client M] and [DW].
> Because of Kenny's carelessness on Smartsheet I was given access to all of the billing within your region for [client C] &[client M]. I told him twice to remove my access. Finally after his talk on

3

February 11 I downloaded everything to a usb flash drive. As well as the entire playbook on Smartsheet. All attachments.

Waiting on the attorney I hired to advise if waiting until February 13, 2022 is necessary. Probably not. But if so I have 2 years to plan the best strategy for speaking with [BN] the CEO of [client C]. Certainly no need to pay [DW] 250 k for the services of a Dewy Carpenter or Donald Davis. [Client C] can hire competent managers like [JS] or [KK] and take the services in-house. I have 20 years experience finding and organizing technicians. I also will be on the doorstep of [client M] CEO and fellow UNC alum [GH]. Doubt she will be happy to find out the price she has paid for keys compared to any average dealer or [client C]. It's entirely possible that [DW's] relationship's with these 2 vendors stays in place. But zero chance the margins and the trust stays in place.

I fly to Dallas next week to meet with a company I have known since 2005. Do approximately 30 million in PDR hail repair each year. Excellent claims infrastructure and PDR warranty in place in hundreds of dealers. After that to Chicago to meet with your most formidable competitor in the hail world. May choose to partner with either. May just choose to sit on the sideline and wait it out.

I see a couple of options that would allow the great relationships you have with these 2 vendors to stay in place. One you could buy me out and place whatever non compete you choose. Second [DW] could hire me to work hail. I like [SB]. We have a good mutual friend in [CE]. I would be willing to work June - September on the front range of Colorado. Or anywhere in Canada except Manitoba or Regina. I have earned approximately 250k in 14 of my 22 hail seasons. So 1/2 of that amount is fair. I also know the next economic downturn will affect the value of the dollar. So pay equal to 6.5 ounces of gold on the gold spot price each month. Based on US dollars. I am well qualified in this area having personally managed over 100 catastrophes for Nationwide insurance. I would need a 5 year contract. I would want the option to walk away early. 4 months per year I will give 100% to [DW]. The remaining 8 months I will use to build a real estate career back in NC. Would need some sort of modest housing and travel stipend. Not interested being stuck in a claims drive for a extended period. Use me in areas my skills and strengths are well suited.

I am not vindictive in any way. The only thing I ever wanted was to get Pam & I back on firm financial footing. Use my area manager position to help with that and build a real estate career in NC. After March 1 I will assume no interest on your part. Use my

4

> playbook. Buckle my chinstrap and do all I can to provide for my family.
> Kind regards, Greg

After DW received this email communication from Clark, the general counsel for DW ("general counsel") had two recorded telephone calls with Clark on February 28, 2020 and a third recorded call on March 2, 2020. In the recorded call on February 28, 2020, Clark confirmed that he had sent the February 25, 2020 email and that he possessed the documents identified in his February 25, 2020 email. Clark originally demanded $250,000 from DW in exchange for the USB drive containing the materials. Clark and general counsel negotiated and finally agreed to a $200,000 payment in exchange for the USB drive. Clark originally agreed to come to St. Louis to retrieve the check. On Tuesday, March 3, Clark mailed the USB drive to headquarters in Missouri. On Wednesday, March 4, Clark had a recorded call with general counsel in which he stated that he did not want to come to St. Louis, and asked whether they could mail the check to his residence, given that he had returned the USB drive. He also stressed that he was not being paid for the USB drive, but rather for the information "in his head." General counsel said that he was unwilling to mail the check to North Carolina, and asked whether Clark would drive to the DW office in Charlotte, North Carolina on Friday to retrieve the check. Clark agreed, but ultimately did not travel to retrieve the check and stopped responding to telephone calls from general counsel.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 2 years, a

5

fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 1 year.

## 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level is 18, as found in Section 2B3.2(a).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The amount demanded from the victim was more than $95,000 but not more than $500,000, resulting in an offense level increase of 2. U.S.S.G. Sec. 2B3.2(b)(2)/2B3.1(b)(7).

### b. Chapter 3 Adjustments:

**(1) Acceptance of Responsibility:** The parties agree that 3 levels should be deducted pursuant to Section 3E1.1(a). and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said

6

evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

    **d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 17.

    **e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

    **f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

    **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A,

9

an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

10/29/2020
Date

/s/ *Gwendolyn E. Carroll*
Gwendolyn E. Carroll
Assistant United States Attorney

10/22/2020
Date

Gregory Clark
Defendant

12

10/28/2020
Date

_____
Brocca Morrison
Attorney for Defendant